IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 12, 2022 Session

## IN RE ESTATE OF PATSY GLOVER BONIFIELD

**Appeal from the Chancery Court for Crockett County**
**No. 10290     George R. Ellis, Chancellor**

_____

### No. W2020-01593-COA-R3-CV

_____

Appellant, an attorney, filed a creditor's claim against Decedent's estate for legal fees allegedly owed to Appellant for his representation of Decedent in her divorce action and in her challenge of the seizure of certain assets by the State of Tennessee.  Appellant argued that he represented Decedent in the seizure matter under a contingency fee agreement; however, Appellant failed to produce a valid contingency fee agreement.  At the hearing, the only proof of fees Appellant produced was an invoice for $3,847.51, and the trial court awarded him the full amount of that invoice.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

David W. Camp, Jackson, Tennessee, appellant, *pro se*.

Randy C. Camp, Alamo, Tennessee, for the appellee, Estate of Patsy Glover Bonifield.

## OPINION

### I. Background

On November 11, 2013, Patsy Glover Bonifield ("Decedent") hired Appellant David W. Camp to represent her in a divorce action against her husband, Glenn R. Bonifield ("Husband").  Decedent filed for divorce on November 25, 2013.  In April 2016, while the divorce action was pending, agents with the drug task force raided Husband's pharmacy.  As a result of the raid, on May 4, 2016, the State of Tennessee (the "State")

seized several of Decedent and Husband's marital assets, including: (1) a coin collection; (2) silver bars; (3) $13,280.74 in currency; and (4) the full value of Husband's VOYA retirement account. Thereafter, Decedent allegedly asked Appellant to represent her in challenging the State's seizure of these marital assets.

On May 6, 2016, Appellant wrote a letter to Decedent concerning his representation of her in the seizure matter. In the letter, Appellant outlined a proposed contingency fee agreement whereby he would be compensated "33-1/3% of any and all amounts" Decedent recovered from the State. On May 13, 2016, Appellant filed a challenge to the seizure on Decedent's behalf. During this time, Appellant continued to represent Decedent in the divorce action but charged her an hourly rate for those services.

On December 5, 2016, Decedent and Husband settled their divorce action. Husband agreed to transfer his full interest in the seized assets, i.e., the coin collection, silver bars, bank accounts (including money seized), and the VOYA retirement account, to Decedent. This settlement was outlined in the couple's Marital Dissolution Agreement ("MDA") that was filed on January 19, 2017. On February 6, 2017, the final decree of divorce was entered.

Despite being awarded all of the seized marital assets in the divorce, these assets were still in the State's possession at the time of the entry of the final decree of divorce. Accordingly, Appellant continued to represent Decedent in the seizure matter. On January 11, 2018, Decedent signed a formal settlement agreement with the State, and on January 30, 2018 an Order of Compromise and Settlement was entered. Under the terms of the settlement, Decedent was awarded all of the silver bars and the remaining funds from the VOYA account after the State received $156,836.77. Decedent agreed to withdraw her claim to the remaining seized assets. After settling with the State, Appellant continued to work with VOYA to release the retirement funds to Decedent in accordance with the MDA.

On March 7, 2018, Decedent died. Despite Decedent's settlement of the seizure challenge, on March 21, 2018, Forrest Bonifield, Decedent's son, executed an agreement with Appellant for his representation of the Estate of Patsy Bonifield (the "Estate" or "Appellee") against the State. This agreement provided that Appellant would receive "1/3%" of the assets recovered from the seizure.

On March 22, 2018, Mr. Bonifield filed a petition to be appointed the personal representative of the Estate in the Chancery Court for Crockett County ("trial court"). On March 30, 2018, Husband and Mr. Bonifield (as alternate payee and the alleged administrator of the Estate) executed the qualified domestic relations order ("QDRO") required to transfer the VOYA funds to the Estate. On April 3, 2018, the trial court entered an order appointing Mr. Bonifield as the personal representative for the Estate. On June 16, 2018, Mr. Bonifield died.

On July 12, 2018, Appellant filed a Verified Claim Against Estate ("Claim 1") seeking compensation for his "representation for recovery of proceeds from VOYA Retirement involving State of Tennessee seizure claim." The date listed for Claim 1 was March 21, 2018, the date Mr. Bonifield executed his agreement with Appellant on behalf of the Estate. The total amount owed for Claim 1 was listed as "Pending," but indicated that it should be "1/3 of all proceeds recovered on behalf of Estate." On July 30, 2018, the trial court entered an order appointing one of Decedent's daughters, Patricia Walls, as the successor personal representative of the Estate. On August 2, 2018, Appellant filed a second Verified Claim Against Estate ("Claim 2") seeking payment of $3,847.51 for "Attorney Fees." Attached to Claim 2 was a July 22, 2018 invoice addressed to Decedent for $3,847.51 in legal services. On August 15, 2018, Ms. Walls filed an objection to both claims.

During this time, Appellant continued to pursue the release of the VOYA retirement funds. On September 24, 2018, Appellant submitted a letter to VOYA threatening legal action if full disbursement was not provided. On October 8, 2018, pursuant to the MDA, VOYA released $360,018.87 to the Estate. Thereafter, under the settlement agreement, $156,836.77 was paid to the State. At that time, the State released the silver bars to the Estate.

The subject of this appeal concerns Appellant's compensation for his representation in the seizure challenge, i.e., Claim 1. On November 18, 2019, the trial court entered an order finding, in pertinent part, that: (1) Decedent never executed a contingency fee agreement with Appellant for his representation in the seizure matter; (2) Claim 1 failed to satisfy the Rules of Professional Conduct, but assuming, *arguendo*, that the defects were cured, the amount requested in Claim 1 was unreasonable; (3) the agreement between Appellant and Mr. Bonifield was not a valid contingency fee agreement; and (4) at the time he entered into the agreement with Appellant, Mr. Bonifield did not have authority to bind the Estate. Therefore, the trial court found that Appellant was not entitled to 1/3 of the proceeds recovered from the seizure. However, the trial court acknowledged that Appellant "expended time on obtaining the VOYA retirement funds and should receive a reasonable fee" for such services. Accordingly, the trial court awarded Appellant a judgment of $3,847.51 against the Estate.[1]

On December 13, 2019, Appellant filed a Motion to Alter or Amend, and the Estate responded on March 5, 2020. On October 19, 2020, the trial court entered an order denying the motion. Appellant appeals.

---

[1] According to the Estate's appellate brief, it has paid this Claim in full. Appellant does not appear to dispute this.

## II. Issue

We perceive the dispositive issue to be whether Decedent entered into a valid contingency fee agreement with Appellant.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Analysis

Appellant filed two claims against the Estate. *See generally* Tenn. Code Ann. § 30-2-307. As discussed, *supra*, Claim 1, the focus of this appeal, alleged that the Estate owed Appellant "1/3 of all proceeds recovered on behalf of [the] Estate" from the seizure challenge. Appellant alleges that the contractual basis for Claim 1 is his March 21, 2018 agreement with Mr. Bonifield, and the parties focus their appellate arguments on whether such agreement is a valid contingency fee contract and whether Mr. Bonifield had authority to bind the Estate to such contract. Based on the record, we conclude that the agreement *Mr. Bonifield* executed with Appellant provides no basis for Appellant to receive compensation for his representation in the seizure matter. Turning to the record, and as discussed *supra*, on January 30, 2018, an Order of Compromise and Settlement between Decedent and the State was entered. Under the terms of the settlement, the State agreed to release to Decedent the silver bars and the majority of the VOYA funds, and Decedent agreed to withdraw her claim to the other seized assets. This settlement marked the end of Decedent's seizure challenge and the end of Appellant's representation of her in that matter.[2] Thus, when Mr. Bonifield executed the March 21, 2018 agreement with Appellant, there were no remaining claims for the Estate—and Appellant on the Estate's

---

[2] We note that Appellant continued to represent Decedent but as her *divorce* attorney. Indeed, the record shows that, after settling with the State, Appellant endeavored to marshal the retirement funds from VOYA to Decedent *as provided under the MDA*. According to the invoice in the record, Appellant drafted the QDRO for the VOYA transfer in February 2018. A QDRO is a legal document often executed as part of a divorce proceeding that "creates or recognizes the existence of an alternate payee's right to receive all or a portion of the benefits payable with respect to a participant under [a] plan . . . ." ***Jordan v. Jordan***, 147 S.W.3d 255, 259 (Tenn. Ct. App. 2004) (citing 29 U.S.C. § 1056(d)(3)(B)(i)(I)). Here, Appellant drafted a QDRO that recognized Decedent's right to receive all of the retirement benefits in Husband's VOYA account as provided under the MDA. Thereafter, as discussed, *supra*, on March 30, 2018, Husband and Mr. Bonifield signed the QDRO, which authorized the transfer of the VOYA funds from Husband to the Estate. The record shows that Appellant continued to pursue VOYA to complete this transfer, and the same was finalized on October 8, 2018.

behalf—to pursue against the State.  As such, Appellant's agreement with Mr. Bonifield concerning the seizure challenge is of no consequence.

In determining what compensation, if any, Appellant is owed for his representation in the seizure challenge, we now focus on whether Appellant and *Decedent* entered into a valid contingency fee agreement concerning the seizure matter.  "In asserting a claim against an estate for services rendered the decedent, the cause of action necessarily is based upon either contract or quasi contract."  ***Cobble v. McCamey***, 790 S.W.2d 279, 281 (Tenn. Ct. App. 1989) (internal citations omitted).  Appellant alleges that his May 6, 2016 letter to Decedent evidences his contingency fee agreement, i.e., contract for legal services, with her.  *See* ***Williams v. Comer***, No. 01A01-9701-CH-00008, 1997 WL 803586, at *4 (Tenn. Ct. App. Dec. 30, 1997) (citing ***Alexander v. Inman***, 903 S.W.2d 686, 694 (Tenn. App. 1995)) ("In construing a contract between an attorney and a client, the general rules of contract law apply.").  "Generally, a contingency fee agreement is understood to be 'an agreement for legal services under which the amount or payment of the fee depends, in whole or in part, on the outcome of the proceedings for which the services were rendered.'" ***Williams***, 1997 WL 803586, at *4 (quoting ***Alexander***, 903 S.W.2d at 696).  Contingency fee agreements are often an alternative to the traditional hourly billing and "enable clients who are unable to pay a reasonable fixed fee to obtain competent representation." ***Alexander***, 903 S.W.2d at 696 (internal citations omitted).  The Rules of Professional Conduct specifically allow for contingency fee agreements but expressly require that such agreements "*shall* be in writing [and] *signed by the client* . . . ."  Tenn. Sup. Ct. R. 8, RPC 1.5(c) (emphases added).

In the May 6, 2016 letter, Appellant proposed that compensation for his services in the seizure challenge would "be a contingent fee of 33-1/3% of any and all amounts recovered by [Decedent]" from the State.  This is the same amount Appellant alleges the Estate owes him under Claim 1, i.e., "1/3 of all proceeds recovered . . . ."  Under Decedent's settlement with the State, she was to receive $203,182.10 of the VOYA retirement funds and all of the silver bars.  Thus, Appellant seeks a judgment against the Estate in the amount of $67,727.37 plus 1/3 of the value of the silver bars.  In its order, the trial court denied Appellant's request for such judgment, finding, in pertinent part, that Appellant presented no proof that Decedent ever signed a contingency fee agreement with him.  The record supports the trial court's finding.  The May 6, 2016 letter bears Appellant's signature only.  On review, there is no document signed by Decedent that could form the basis of a contingency fee agreement between Appellant and Decedent.  *See* Tenn. Sup. Ct. R. 8, RPC 1.5(c).  As such, we affirm the trial court's finding that Appellant and Decedent never entered into a contingency fee agreement.  Because Appellant and Decedent never entered into such agreement, there is no basis for Appellant to recover a 1/3 contingency fee from the Estate under Claim 1.  Therefore, we affirm the trial court's denial of Claim 1.

Despite Appellant's failure to provide proof of an enforceable contract for his legal services in the seizure matter, the trial court recognized that Appellant should receive a

reasonable fee for such services. Accordingly, the trial court allowed Claim 2 and entered a judgment for $3,847.51 against the Estate. This was not error. Indeed, "[p]ersons who provide valuable services to another without an agreement regarding compensation are entitled to recover the reasonable value of their services (1) when the circumstances indicate that the parties to the transaction should have understood that the person providing the services expected to be compensated and (2) when it would be unjust to permit the recipient of the services to benefit from them without payment." *In re Estate of Marks*, 187 S.W.3d 21, 29 (Tenn. Ct. App. 2005) (citing *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197-98 (Tenn. 2001); *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995). Such principle applies to claims against a decedent's estate. *Id.*; *see also Cobble*, 790 S.W.2d at 282 ("[I]f the plaintiffs establish that the decedent expressly or impliedly requested the services, and if plaintiffs prove that they rendered those services with the expectation that they were to be paid in some manner for those services, then a contract is made out entitling the plaintiffs to recover against the estate for the reasonable value of those services."). Although Ms. Walls initially filed an objection to Claim 2, in its appellate brief, the Estate explains that it has paid Claim 2 in full and asks this Court to affirm the trial court's order. Thus, the Estate does not appear to dispute that Appellant provided a service to Decedent and should be awarded $3,847.51 for the same.

On appeal, Appellant argues that the $3,847.51 award is insufficient for his services rendered in the seizure challenge, and that the limited fee unjustly enriches the Estate. As the creditor seeking to recover payment for his services, Appellant had the burden of proving the reasonable value of his services. *See In re Estate of Marks*, 187 S.W.3d at 32 (citing *CPB Management, Inc. v. Everly*, 939 S.W.2d 78, 81 (Tenn. Ct. App. 1996); *Bokor v. Holder*, 722 S.W.2d 676, 680-81 (Tenn. Ct. App. 1986)). Many practitioners prove the reasonable value of their attorney's fees by presenting an affidavit to the court that details the number of hours and the work performed in a given case. *Wright v. Wright*, No. M2007-00378-COA-R3-CV, 2007 WL 4340871, at *5 (Tenn. Ct. App. Dec. 12, 2007) (quoting *Hosier v. Crye-Leike Commercial, Inc.*, No. M2000-01182-COA-R3-CV, 2001 WL 799740, at *6 (Tenn. Ct. App. July 17, 2001)). It appears from the record that Appellant failed to present to the trial court *any* proof of the reasonable value of his representation in the seizure challenge.[3] Instead, Appellant relied solely on his argument that the parties entered into a contingency fee agreement, and that he was entitled to 1/3 of all proceeds Decedent recovered from the State under such agreement. At oral

---

[3] We note that there is very little evidence in the appellate record of the proof submitted to the trial court. It is unclear whether the trial court ever held a hearing in this matter but if it did, this Court is unable to review the arguments and evidence presented in the same as Appellant did not file a transcript or statement of the evidence on appeal. *See* Tenn. R. App. P. 24 (b), (c). Without a transcript or statement of the evidence, we must presume that there was sufficient evidence before the trial court to support its judgment. *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 661 (Tenn. Ct. App. 2012), *perm. app. denied* (Tenn. Apr. 10, 2013); *Outdoor Management LLC v. Thomas,* 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992); *Baugh v. Moore*, No. M2013-02224-COA-R3-CV, 2015 WL 832589, at *3 (Tenn. Ct. App. Feb. 25, 2015).

argument before this Court, the panel attempted to glean from Appellant how much time he devoted to the seizure challenge, but Appellant stated that he did not keep contemporaneous billing and maintained his argument that he had a contingency fee agreement with Decedent. In the absence of contemporary billing records or other evidence, Appellant has failed to provide any proof of the reasonable value of his services rendered during the seizure challenge. *See* **In re Estate of Marks**, 187 S.W.3d at 32.

In determining the reasonable value of Appellant's services, it appears the trial court turned to the only proof in the record of Appellant's legal fees, i.e., the invoice for $3,847.51 that was attached to Claim 2. The invoice is for legal services rendered from May 2017 through July 2018 and shows that Appellant billed 13.2 hours during this time period. The invoice also shows expenses (filing fees and postage) of $383.49 and appears to carry forward balances owed for previous invoices totaling $2,643.55. Although Claim 2 and the attached invoice may relate to Appellant's representation as Decedent's divorce attorney, *it is the only proof of Appellant's legal fees that he presented to the trial court*. Accordingly, the record demonstrates that Appellant is entitled to no more than $3,847.51 for his services. Although Appellant argues that this amount is insufficient for the work performed, Appellant was provided the opportunity to prove the value of his services in the seizure challenge and, for the reasons outlined above, he failed to do so. *See* **Bokor**, 722 S.W.2d at 681 ("There is no proof in this record as to the value of Bokor's services. Bokor has had his day in court with the opportunity to prove the value of his services. Through no fault except his own, he failed to do so."). As such, we conclude that the trial court did not err when it found that $3,847.51 represented the reasonable value of Appellant's services, and we affirm the award of same.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's final order. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed to the Appellant, David W. Camp, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE
